# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ANTHONY W. BEDINGHAUS,             Case No. 1:17-cv-862

    Plaintiff,                                            Dlott, J.
                                                                   Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Plaintiff Anthony Bedinghaus filed this Social Security appeal in order to challenge the Defendant's disability decision. *See* 42 U.S.C. §405(g). The ALJ awarded Plaintiff SSI benefits beginning in 2016, the day prior to Plaintiff's 50th birthday, but determined that Plaintiff was not under any disability prior to that date. As explained below, I conclude that the ALJ's finding of non-disability prior to January 18, 2016 should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

Plaintiff, who has a high school education, worked as a diesel mechanic and as a mower/yard worker, performing both jobs at the "heavy" level of exertion. (Tr. 32). Plaintiff was 41 years old on his alleged onset date, and was 45, still a "younger individual" on his DLI. Plaintiff alleges disability primarily on the basis of physical impairments, which include a back impairment and neuropathy.

1

Prior to the denial of the applications that form the basis for this judicial appeal, Plaintiff filed an earlier application for disability insurance benefits ("DIB"). In that August 7, 2011 application, Plaintiff alleged the same disability onset date of January 1, 2008. Plaintiff last worked in 2005 so his Date Last Insured ("DLI") for purposes of DIB is September 30, 2011. Plaintiff's first DIB application was denied initially shortly after his DLI, on October 24, 2011 and was denied on reconsideration on April 2, 2012. (Tr. 46; *see also* Tr. 21). Plaintiff did not seek a hearing or otherwise appeal that adverse determination.

In June 2014, Plaintiff filed a new application for DIB and a protective application for supplemental security income ("SSI"). In his new applications, Plaintiff again alleged that his disability began on January 1, 2008. After Plaintiff's 2014 applications were denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On August 17, 2016, nearly five years after his DLI and more than eight and a half years after his alleged onset of disability, Plaintiff appeared with counsel and gave testimony before ALJ Andrew Gollin; a vocational expert also testified. (Tr. 42-87). By the time of the hearing, Plaintiff had reached the age of 50 and was living with his wife and the youngest of his three sons, then aged 9.[1]

At the outset of the hearing, the ALJ advised Plaintiff and his attorney that he could not ordinarily consider the alleged onset date of January 2008 due to the prior adverse decision of April 2, 2012 and inquired if counsel could state any basis that would represent

---

[1]Plaintiff testified that at the time of the hearing, his other two sons were in their twenties. One of the two would have been a minor living with Plaintiff and his wife in 2008, while the other would have been 18 or 19. (*See* Tr. 719, reporting in August 2014 that he lived with two sons). The youngest son, age 9 at the time of the hearing, would have been a year old at the time of Plaintiff's alleged onset of disability in 2008.

good cause for reopening the prior application in support of the earlier alleged onset date. (Tr. 47). Counsel argued that since the reconsideration denial date, new medical evidence "demonstrated that the claimant's lumbar stenosis has progressed significantly" and that the medical evidence was "new and material evidence that would relate back to the date last insured to support a reopening of the prior claim." (*Id*). After review of that evidence, however, the ALJ issued a mostly adverse decision. (Tr. 20-35). In the September 8, 2016 written decision, the ALJ found that Plaintiff was entitled to SSI benefits under the medical vocational grid rules as of the day prior to his 50th birthday but was otherwise not under a disability during any of the alleged disability period. The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.

Regarding Plaintiff's previously denied application and the effect of administrative res judicata, the ALJ first concluded that the records did not establish the existence of

> any new and material evidence … to find a different determination than that rendered in 2012. As such…reopening of the prior decisions is not appropriate. As a result, the claimant's current Title II [DIB] application is denied because it is barred by the prior 2012 reconsideration determination, which postdates the date last insured of September 30, 2011. As for the Title XVI [SSI] application, the undersigned finds that it is partially favorable/unfavorable. The undersigned believes that the claimant is capable of performing a range of sedentary work….[but] would grid out at the attainment of age 50….

(Tr. 21). Thus, the ALJ concluded that Plaintiff was entitled only to age-related SSI benefits as of January 18, 2016 under the medical vocational grid rules. (*Id.*)

The ALJ found that since 2008, Plaintiff had severe impairments of lumbar degenerative disc disease, lumbar spinal stenosis, diabetes mellitus type II with neuropathy, hypertension, obesity, bilateral carpal tunnel syndrome, depression, and a panic disorder without agoraphobia. (Tr. 24). Plaintiff does not dispute the ALJ's

3

determination that none of his impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

Clearly, Plaintiff was not capable of performing the type of heavy exertional work as a diesel mechanic that he once performed. However, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to the following additional limitations:

> [T]he claimant must be able to alternate between sitting/standing at will, provided the person is not off task more than 10% of the work period. The claimant is limited to no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling. The claimant is limited to no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than frequent handling, fingering, and feeling bilaterally. The claimant is limited to no work involving concentrated exposure to extreme cold, extreme heat, and vibration. The claimant is limited to no work involving hazardous machinery/equipment and no work involving unprotected heights. The claimant is limited to being able to understand, remember, and carry out short and simple instructions, involving 1-3 step tasks. The claimant is limited to no more than occasional changes in workplace settings and workplace duties. The claimant is limited to no more than infrequent and brief interaction with the general public which is defined as no more than 15% of the workday with each interaction lasting no more than three minutes. The claimant is limited to no more than occasional interaction with coworkers and supervisors. The claimant must be able to elevate his legs 12-15 inches for up to a quarter of the workday.

(Tr. 26).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a significant number of jobs in the national economy, including the representative unskilled jobs of freight/stock laborer, inspector/tester, and surveillance system monitor. (Tr. 34). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

4

In the Statement of Errors filed on appeal to this Court, Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physician, Dr. Hines. Construing Plaintiff's claims liberally, he also appears to assert more broadly that the ALJ's decision is not supported by substantial evidence. Neither claim is persuasive.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from

the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to give controlling weight to the opinions of his treating physician, Dr. Hines. "Dr. Hines was not given enough merit…." (Doc. 11 at 1). Construing Plaintiff's *pro se* argument

liberally, he also asserts a closely related claim that the ALJ's RFC and non-disability decision as a whole are not supported by substantial evidence in the record.

### 1. Evaluation of Treating Physician Hines

Until March 27, 2017, the Social Security Agency had established an "automatic hierarchy for treating sources, examining sources, ...[and] nonexamining sources," with the opinion of treating sources automatically entitled to the greatest weight. *See* 82 FR 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017). Thus, the long-standing regulation regarding treating physicians provided: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it <u>controlling</u> weight." 20 C.F.R. §404.1527(c)(2) (emphasis added); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner also was required to provide "good reasons" if the Commissioner did not give controlling weight to the opinion of a treating physician. *Id.*

Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. §404.1520c entirely replaces the treating physician rule previously set forth in 20 C.F.R. § 404.1527. However, although some revisions apply to claims that remained pending at the administrative level on March 27, 2017, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Plaintiff filed the instant claim in 2014; therefore, the prior "treating physician rule" and related SSRs and case law

7

continue to apply to this case. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018). Having determined that the well-established rule remains applicable, I turn to the ALJ's analysis of the various opinions offered by Dr. Hines.

Dr. Hines, a family medicine physician, began treating Plaintiff close in time to his alleged disability onset date.[2] On September 30, 2014, Dr. Hines completed a medical statement questionnaire in which he noted that an August 8, 2011 CT scan of Plaintiff's spine showed "severe L4-L5 central canal stenosis" and moderate stenosis at other discs. He further described Plaintiff's "progressive pain for many years" including increased pain with activity, and limited range of motion in Plaintiff's lumbar spine. (Tr. 728). Dr. Hines opined that Plaintiff was "unable" to bend, stoop, or kneel, could stand or walk only 10 to 15 minutes at a time, with a similar limitation on sitting before needing to move. He indicated that Plaintiff "rotates" between sitting and intermittent standing and walking, and offered additional mental limitations on Plaintiff's attributable to depression. (Tr. 729). He indicated that Plaintiff's wife "must help him with showering, hygiene due to obesity,[3] back problems." (*Id.*)

At the request of counsel who represented Plaintiff before the ALJ, Dr. Hines completed three additional questionnaires on February 23, 2016: (1) a Mental Impairment questionnaire; (2) a Lumbar Spine Medical Source Statement; and (3) a Diabetes Mellitus

---

[2]Dr. Hines states on various February 2016 forms that he had been treating Plaintiff for "7-10 years." (Tr. 777). Although a date ten years earlier would have preceded Plaintiff's disability onset date, a date seven years earlier would have been more than a year <u>after</u> Plaintiff's alleged onset date. On September 30, 2014 date, Dr. Hines similarly stated that he began treating Plaintiff "5-10 years ago." Again, a date five years prior would have been September 2009, nearly two full years <u>after</u> Plaintiff's alleged onset date. (Tr. 728). Due to Dr. Hines' imprecise estimates of how long he had been treating Plaintiff, it is impossible to determine whether the treatment relationship preceded the January 2008 alleged onset date.
[3]The record reflects that Plaintiff is morbidly obese, weighing in excess of 350 pounds.

8

Medical Source Statement.[4] Of the various opinions expressed by Dr. Hines on those forms, Plaintiff most heavily relies on the 2016 Lumbar Spine Statement. On that form, Dr. Hines opined that Plaintiff can walk no more than 4 blocks, can sit or stand for no more than 5 minutes at a time, and can sit, stand, or walk for less than 2 hours total in an 8-hour day, while requiring at least 6 hours during the work day to lie down or recline at 16 degrees. (Tr. 773). Dr. Hines further opined that Plaintiff will need frequent unscheduled breaks throughout the day, but only for as long as required to change position. (Tr. 773). He recommended elevating Plaintiff's legs "as much as possible for edema," or 25-50% of the workday in the context of a sedentary position. (Tr. 774). He also opined that Plaintiff can rarely lift or carry less up to10 pounds, but never 20 pounds or more. (*Id.*) He stated that Plaintiff can never crouch/squat or climb ladders, and that Plaintiff has significant limitations with reaching, handling, and fingering. (*Id.*) By letter dated August 1, 2016, Dr. Hines provided one last opinion, handwriting in a date to this typed statement: "[I]t is my professional opinion that the earliest date that the description of symptoms and limitations in the Lumbar Spine Medical Source Statement completed on February 23, 2016 and attached hereto began: <u>~2009 or earlier</u>." (Tr. 1097, emphasis added).

There is no question that acceptance of Dr. Hines' opinions would have resulted in a determination that Plaintiff became disabled years prior to the 2016 date determined by the ALJ. However, the ALJ's evaluation and rejection of Dr. Hines' back-dated opinions is supported by substantial evidence.[5] A treating physician's opinions are

---

[4]The Diabetes Statement is only partially completed and was not signed.
[5]The ALJ's decision reflects that he did not find the 2014 or 2016 opinions of Dr. Hines to be "new and material" for purposes of reopening the prior adverse decision rendered in 2012. (Tr. 21). Separate and

entitled to controlling weight, but only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ offered "good reasons" for finding that Dr. Hines' opinions were not entitled to controlling weight – because the opinions were not well-supported and were inconsistent with the record as a whole including Dr. Hines' own records during the relevant time period.

The ALJ first pointed out that Dr. Hines' opinions on Plaintiff's physical limitations generally related to his specialty in family medicine, but that Dr. Hines lacked any expertise in his separate assessment of Plaintiff's mental limitations.[6] The ALJ acknowledged that Dr. Hines' August 2016 opinions "would effectively make the claimant disabled, in part due to off-task time and absences from work, as well as an inability to perform the required functions of a sedentary position." (Tr. 31). However, the ALJ gave Dr. Hines' opinions only "partial" rather than controlling weight. The ALJ articulated the following reasons for discounting the opinions of Dr. Hines and the similar opinions of a pain management doctor, Dr. Shapiro, who began treating Plaintiff in July 2015:

> [T]hese opinions refer to imaging and treatment records, but do not provide specific rationales or explanations for the articulated limitations. For example, there does not appear to be any basis for the articulation that the claimant would need greater breaks, more time to recline or have legs elevated, have more time off-task, and would be absent from as much work as noted. Additionally, these assessments were proffered in 2016, after the date the claimant would have been found disabled under the medical-vocational guidelines. Dr. Hines stated in August 2016 that these limitations are valid to 2009 or earlier…. However, there is no explanation, and so the undersigned will not backdate these opinions to points in the past.
>
> The medical evidence does not support the extreme limitations provided by Drs. Shapiro and Hines prior to January 2016, which is when the claimant's

---

apart from the determination of whether administrative res judicata applies, however, the undersigned finds that the ALJ's analysis of Dr. Hines' opinions on the merits is substantially supported.
[6]Plaintiff challenges only the assessment of his physical limitations in this judicial appeal.

> age category changed. These doctors' own medical records are inconsistent with their assessments and with finding the claimant disabled prior to the attainment of age 50.
>
> Dr. Hines examined the claimant in March 2012…. The claimant had a slightly antalgic gait, but there was no significant tenderness to palpation of the lumbar spine. Monofilament sensation was 5/5.
>
> When Dr. Hines examined the claimant in September 2014, the claimant had a limited range of motion of the back…. His gait was slow. There was no tenderness of palpation of the lower back. In November 2014, Dr. Hines noted that the claimant had positive straight leg raises as 30 degrees bilaterally…. He had limited range of motion, and he had difficulty with lying down/sitting up. However, deep tendon reflexes, sensation, and strength were intact in both lower extremities.

(Tr. 31). In May 2015, Plaintiff told Dr. Hines that he can do a few chores at home but that he must be seated due to his musculoskeletal impairments. (Tr. 25). He testified that he does not use an assistive device for ambulation but spends most of his time on the couch. He also testified that he has a driver's license, occasionally goes grocery shopping with his wife, and that he attends church weekly.

Consistent with Dr. Hines, when Dr. Shapiro first examined Plaintiff in July 2015, he found grossly intact cranial nerves, no Achilles ankle jerks, and noted many other normal findings including normal tone and full muscle strength except in the wrists, with unremarkable gait and station and negative straight leg raises. (Tr. 31). Likewise, Plaintiff exhibited no new problems with gait, station, coordination, deep tendon reflexes or motor/sensory examination when examined by Dr. Shapiro in October 2015. Dr. Shapiro made no changes and noted he looked pretty good on exam. At that time, Plaintiff reported he was pretty functional in the community. (Tr. 32).

On examination a few months later in February 2016, after the date that the ALJ found that Plaintiff would be considered to be disabled under grid rules, Dr. Hines again noted a fairly normal gait. Plaintiff did alternate between sitting and standing at that

11

examination and exhibited new tenderness to palpation across the lower back, with deep tendon reflexes reduced to 1+/4 in the bilateral knees and ankles. However, strength and sensation remained intact in the lower extremities. (Tr. 32).

Based on Plaintiff's history and the number of normal examination findings made by Dr. Hines and other physicians throughout the years between Plaintiff's alleged onset date and evidence supporting a gradual decline up to his 50th birthday in 2016,[7] the ALJ concluded:

> Examination findings such as these are inconsistent with the extreme limitations given by Drs. Hines and Shapiro, and are inconsistent with finding the claimant disabled prior to his attainment of age 50. Their limitations do not appear to be tied to any specific physical signs or findings, and are not supported with detailed explanations. Nevertheless, the undersigned included certain limitations involving elevating the claimant's legs in the residual functional capacity finding of this decision.

(Tr. 32).

### 2. The ALJ's RFC Determination is Substantially Supported

An ALJ's RFC determination need not rest on a specific medical opinion, as the RFC determination is not to be determined by a physician, but instead is reserved to the Commissioner. *See* 42 U.S.C. § 423(d)(5)(B), 20 C.F.R. § 1546(c); *see also Coldiron v. Com'r*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) (holding that ALJ did not impermissibly act as a medical expert by rendering a sedentary work RFC). Here, the ALJ provided a

---

[7]Plaintiff's attorney argued that Plaintiff's condition worsened over time, but that even if limited to sedentary work, he would be disabled for purposes of SSI as of his 50th birthday. (Tr. 47-50). Plaintiff testified that he was fired from his job in 2005 due to a "[l]ack of work, lack of showing up, absence," and being "[u]nable to get along with people" based upon his irritability, rather than based on any physical limitation. (Tr. 54; *see also* Tr. 53). However, he attributed his present inability to work primarily to back pain, which he described as aggravated with sitting or standing. He testified that his back condition has existed since 2002 or 2003, years prior to his disability onset date. (Tr. 57). He also testified that his wife has assisted him with toileting, showering, and dressing since 2005 or 2006, well before his alleged 2008 onset date. (*Id.*) However, Plaintiff agreed that his back pain has worsened "over the years." (Tr. 57).

well-reasoned basis for his RFC determination, which he based on multiple medical records and medical opinions. Among those opinions were the assessments of state agency reviewers, who limited Plaintiff to a "light" exertional level with some mental limitations. (Tr. 30). The ALJ did not fully accept their assessments but instead "limited the claimant to a greater degree…in order to fully accommodate the claimant's impairments." (*Id.*)

Notably, the ALJ found no "new and material" evidence sufficient to reopen the prior adverse determination made in April 2012, concluding that administrative res judicata barred reopening that claim. However, the ALJ still considered all evidence in the record as a whole, including medical evidence dated prior to the 2012 denial, before determining that Plaintiff remained capable of a restricted range of sedentary work throughout the relevant time period leading up to January 18, 2016.

In Plaintiff's reply memorandum, Plaintiff argues that he is disabled in part because of his "unbearable pain" and debilitating muscle spasms. (Doc. 13). He argues that he has engaged in all recommended treatment in an attempt to secure relief from that pain, but that his uncontrolled diabetes made him a poor candidate for several treatments including back injections and surgery. (*Id.*) In contrast to Plaintiff's statements, however, in 2014 records reflected that his hemoglobin A1C level had dropped to 8.1 from 9.8, indicating significantly improved diabetes control. (Tr. 1080).

In any event, to the extent that Plaintiff is alleging disability based on his pain complaints, the ALJ's adverse assessment of Plaintiff's credibility is relevant. Specifically, the ALJ here gave only "partial weight to the claimant's articulated symptoms and limitations as they are partially supported and consistent with the evidence." (Tr. 30; *see also* Tr. 27, "The undersigned finds the claimant's testimony regarding the intensity,

13

persistence, and limiting effects of his individual symptoms to be only partially consistent with the evidence"). In assessing whether to accept Plaintiff's testimony that his pain had remained at a disabling level for many years prior to 2016, the ALJ summarized many medical records in which Plaintiff reported no pain and examining physicians recorded mostly normal findings. (*See generally*, Tr. 24-25, 28-30). The ALJ noted that Plaintiff has treated his conditions almost exclusively with pain medications, but "has not pursued much in the form of any other treatment." (Tr. 30).

> [H]e does use hot and cold, but there is no evidence of surgical intervention, additional treatments, etc. There does appear to be some reference to injections, which provided some relief to the claimant. There are the opinions from the claimant's treating physicians…to which the undersigned has given partial weight. The claimant has been prescribed psychotropic medications for his mental impairments, but he has not pursued any other treatments to assist him in his conditions [such as therapy], and has not availed himself of any other treatment options.

(*Id*).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The undersigned finds no basis for disturbing the ALJ's credibility assessment in this case.

As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir. 1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The fact that there is an evidentiary basis for some level of pain does not mean that an

ALJ must find that a plaintiff suffers from a disabling level of pain. *See Bruce v. Com'r*, 2009 WL 239023 at*12 (S.D. Ohio Jan. 29, 2009) (affirming evaluation of plaintiff's back pain as less than disabling).

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question," as long as the hypothetical question accurately portrays the actual limitations of the Plaintiff. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The RFC determined by the ALJ in this case is substantially supported by the record as a whole. Even if a reviewing court would resolve the issues differently, if supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Plaintiff's arguments amount to a reweighing of the evidence and do nothing to undermine the substantial evidence that supports the ALJ's determination.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                             */s Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ANTHONY W. BEDINGHAUS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-cv-862

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).